WRIGHT v. STATE.

Opinion delivered March 4, 1918.

1.  APPEAL AND ERROR—PUBLIC OFFICIAL REMOVED FROM OFFICE—RIGHT OF APPEAL FROM CONVICTION—EFFECT OF RUNNING AGAIN FOR RE-ELECTION.—The mayor of a city (appellant) was indicted and convicted for a failure to disperse a riotous crowd, and to arrest the rioters (Kirby's Digest, §§ 2522, 2525). He was removed from office, and at a special election to fill the vacancy, offered as a candidate, but was defeated. *Held,* the fact that appellant ran for the office of mayor at the special election to fill the vacancy, would not prevent his prosecuting an appeal from the judgment of the circuit court pronounced upon his conviction for violation of the statute.

2.  CRIMINAL LAW—FAILURE TO DISPERSE RIOTERS—INDICTMENT—WORDS OF STATUTE.—An indictment held valid, which charged the mayor of a city, in the words of the statute (Kirby's Digest, § 2525), with failing to disperse a riotous crowd.

3.  CRIMINAL LAW—CONVICTION—SUFFICIENCY OF THE EVIDENCE.—In testing the sufficiency of the evidence to sustain a conviction, the evidence must be considered in the light most favorable to the State.

4.  CRIMINAL LAW—FAILURE TO SUPPRESS RIOT.—The evidence held sufficient to warrant a verdict convicting defendant, mayor of a city, with failing to use proper means to suppress the disorderly conduct of striking telephone operators and their sympathizers.

5.  CRIMINAL LAW—FAILURE TO DISPERSE RIOTERS.—The mayor of a city will not be criminally responsible for failure to attempt to disperse a riotous crowd, unless the jury believe from the evidence, beyond a reasonable doubt, that the defendant knew that said persons were unlawfully or riotously assembled at said place, and did, with such knowledge, wilfully and knowingly fail, refuse or neglect to go among the said persons, or as near them as possible, and in the name of the State command them to disperse.

6. CRIMINAL LAW—NEGLECT OF DUTY BY MAYOR OF CITY—ADVICE OF CITY ATTORNEY.—The mayor of a city is presumed to know the laws of the State applicable to his duties, and he can not escape the penalties of the law by acting upon the advice of the city attorney, or of any one else. At most, his acting upon the advice of the city attorney, in good faith, could only go in mitigation of his punishment.

7. CRIMINAL LAW—FAILURE OF CITY OFFICIAL TO PERFORM DUTY—NEGLECT OF OTHER OFFICIALS.—It is no defense to the prosecution of the mayor of a city for failing to disperse a riotous crowd, that the sheriff of the county also knew of the assembly, and made no attempt to disperse it, as required by the statute.

8. CRIMINAL LAW—FAILURE TO DISPERSE UNLAWFUL ASSEMBLAGE.—In a prosecution of the mayor of a city for his failure to disperse an unlawful assemblage, it is proper to prove before the jury all the unlawful acts of the assembled crowd of which the defendant was informed, as tending to show that the assembly was an unlawful one within the meaning of the statute, and that the defendant had knowledge of that fact.

9. TRIAL—QUALIFICATION OF JUROR—BIAS.—A juror is not disqualified, where he states expressly that he had no prejudice against the defendant, knew nothing of the case, and had not made certain statements attributed to him.

10. EVIDENCE—DISCREDITING WITNESS.—The bias of a witness is not a collateral matter; pecuniary interest, personal affection or hostility, sympathy or animosity, a quarrel or prejudice, may always be shown to discredit a witness.

11. WITNESSES—PROOF OF BIAS OR PREJUDICE—CONTRADICTING EVIDENCE.—Before other witnesses can be called to show that statements have been made out of court, tending to show bias or prejudice on the part of a witness, it is necessary to lay the proper foundation by calling his attention to the time, place and person involved in the supposed contradiction; then if the witness denies having made the declaration or done the act imputed, the contradictory evidence becomes proper. The scope of the attempt to thus assail a witness is largely in the discretion of the trial court, but the right itself may not be denied in the discretion of the court.

12. WITNESSES—PROOF OF BIAS OR PREJUDICE.—The mayor of a city was on trial for failure to perform a statutory duty with reference to dispersing an unlawful assemblage. *Held,* it was competent to show on cross-examination that the witness (for the prosecution) had on many occasions expressed ill feelings toward the mayor for trying to prevent the witness from violating the law by selling cigarettes and exhibiting gaming devices.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; reversed.

*E. H. McCulloch, A. A. McDonald, Hiner & Hiner* and *Covington & Grant,* for appellant.

1. The demurrer should have been sustained. The indictment charges more than one offense. Kirby's Digest, sections 2525, 2522, 2526, 2528, 5492; 22 Cyc. 376; 64 Ark. 231; 100 *Id.* 591; 83 *Id.* 244; 45 *Id.* 62. See also 21 Ark. 183; 34 Cyc. 1782.

2. The verdict is contrary to the law and the evidence. Defendant's instruction No. 1 should have been given. Mere lawful picketing is not unlawful. Martin Mod. Law of Labor Unions, § § 168-9; 105 Ark. 32.

3. The court should have given instruction No. 9. 105 Ark. 32.

4. It was error to refuse Nos. 10 and 13. They are the law. 71 Ark. 495. Also in refusing Nos. 14, 15 to 19, 21, 22.

5. It was error to give No. 1 for the State. Also Nos. 4 and 5.

6. The juror Brockington was biased and prejudiced.

7. It was error to exclude Grady Manning's testimony. 53 Ark. 387; 110 *Id.* 402-409. See also 22 Cyc. 388.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee; *Oglesby, Cravens & Oglesby,* of counsel.

1. The demurrer was properly overruled. Besides the State elected to prosecute under section 2525. 84 Ark. 139; 77 *Id.* 426. The indictment follows the language of the statute. 111 Ark. 217.

2. The verdict is sustained by the evidence.

3. There is no error in the instructions. 77 Ark. 418; 125 *Id.* 260; 105 *Id.* 32.

4. No error in refusing to withdraw the case from the jury on account of alleged bias of juror Brockington. *Vanhouser* v. *Butler,* 131 Ark. 404; 104 Ark. 606, 615; 120 *Id.* 193.

5. There was no error in excluding Manning's testimony. *Dean* v. *State,* 130 Ark. 322. See also 48 Ark. 34;

72 *Id.* 420; 125 *Id.* 47; 45 *Id.* 62; 57 *Id.* 5; *Speer* v. *State,* 130 Ark. 457.

### STATEMENT OF FACTS.

On the 22d day of September, 1917, the grand jury of Sebastian County, Fort Smith District, returned an indictment against J. H. Wright in two counts. J. H. Wright was mayor of the city of Fort Smith, and the first count was drawn under section 2525 of Kirby's Digest, which provides what shall constitute a riotous assembly in a city or town and the duty of the mayor and other officers to disperse the same. The second count was based upon section 2522 of Kirby's Digest, which provides for the arrest of rioters who shall have refused to disperse upon proclamation being made in the manner provided by the statute. The facts are as follows:

The telephone company at Fort Smith had sixty-three girls employed in their office. On the 19th day of September, 1917, all except four or five of the girls walked out of the office and went on a strike. For several days these girls and a number of their friends and sympathizers gathered about the building shouting and making considerable noise. During all this time more than twenty people were assembled, and for much of the time there were nearly two hundred of them. It was shown by the witnesses for the State that these people attempted to climb up the fire escape of the building and that they seriously interfered with those at work therein by yelling and making loud noises; that they attempted to dig up the gas pipe running into the office and finally did dig it up; that on one morning they attempted to carry some groceries into the building for the use of the employees at work there and that the crowd assembled took a part of these provisions from them and threw them into the street. It was shown that the crowd finally cut the water off from the building and by force prevented some of the employees from going in there to work. Evidence was also adduced by the State tending to show that the defendant

was present and saw them dig up the gas main and that he knew about the crowd trying to prevent employees from entering the telephone building to work.

On the other hand, the defendant in positive terms denied that he knew of the gas main being taken up or that employees of the telephone company were prevented from going into the building to their usual work or that the employees already at work there were disturbed by loud and unusual noises of the crowd assembled near the building. He also testified that he had warned the assembled crowd, and particularly the striking telephone girls, against any violence of any kind or the attempted destruction of property.

The testimony of the defendant was corroborated by people who composed a part of the crowd assembled around the telephone office and by many of the telephone girls who went on the strike. They all testified that the defendant warned them particularly against any acts of violence, and said that he was not there when the gas or water mains were dug up and that he was not present when the employees were prevented from entering the building of the telephone company or when the provisions that were being carried into the building were taken from those carrying them and thrown into the street.

The jury returned a verdict of guilty against the defendant and assessed his punishment at a fine of $250. The defendant has appealed.

HART, J., (after stating the facts). (1) The record shows that after the defendant was convicted and an order of removal from office had been made, an election was called and held to fill the vacancy caused by his removal. The defendant became a candidate for this office at the election and was defeated. A motion is made by the State to dismiss this appeal on that account. It is contended that he is assuming an inconsistent position by appealing. We do not agree with counsel in this contention. There was a judgment against the defendant for the fine and costs imposed and he had a right to appeal to reverse that judgment, if the trial court committed any

errors prejudicial to his rights which were properly pre-
served for review in this court. His conduct in running
again for the same office at an election called to fill the
vacancy caused by his removal was a collateral matter
and had no connection whatever with his prosecution of
the appeal in this case.

(2) It is contended by counsel for the defendant
that the indictment charges more than one offense and
that a demurrer to it should have been sustained. The
State was required to elect under which count of the in-
dictment it would proceed and elected to prosecute the de-
fendant under section 2525 of Kirby's Digest. The sec-
tion reads as follows:

"When persons to the number of twenty or more
are unlawfully or riotously assembled in a city or town,
the sheriff of the county and his deputies, and the other
peace officers and magistrates of such city or town, to-
gether with the mayor or other chief officers of the city
or town, must go among the persons assembled, or as near
as possible, and in the name of the State command them
to disperse.

We do not deem it necessary to set out the indict-
ment at length, but we have compared it with the section
of the statute just quoted and the offense is charged sub-
stantially in the language of the statute itself. The lan-
guage of the statute describes the offense with certainty
and in such cases it is sufficient to charge the offense in
the words of the statute which creates it. *Holland* v.
*State,* 111 Ark. 214.

(3-4) It is also insisted that the testimony is not
legally sufficient to warrant the verdict. In testing its
sufficiency, the evidence must be considered in the light
most favorable to the State. The evidence established
that on the 19th day of September, 1917, the girls em-
ployed in the office building of the telephone company of
Fort Smith, went out on a strike. During the afternoon
they and their friends to the number of about one hun-
dred persons assembled around the building. During the
early hours of the night the crowd increased to several

hundred people. From that time until the 26th inst. there was continuously a crowd around the building of from fifty to three hundred persons. During this time the electric wires furnishing light to the telephone building were cut out and the gas pipes which supplied the building were also cut. The assembled crowd made considerable noise and at times prohibited employees from entering the building and took provisions which they were carrying into the building from them. There was also evidence adduced by the State which tended to show that the defendant was present on one night and saw the crowd digging up the gas main and that he knew that the crowd attempted to prevent employees from entering the building. This testimony was legally sufficient to warrant the verdict.

(5) The defendant assigns as error the refusal of the court at his request to instruct the jury that if it found from the evidence that his failure to go among the crowd assembled and in the name of the State command them to disperse because of lack of knowledge that the crowd was assembled for the purpose of unlawfully preventing the telephone company's employees from entering the building, that it should find him not guilty. This instruction was properly refused. The court is not required to repeat instructions. It is substantially the same as instruction No. 5, given at the request of the defendant, in which the jury were expressly told that unless they believed from the evidence beyond a reasonable doubt "that the defendant, J. H. Wright, knew that said persons were unlawfully or riotously assembled at said place and with such knowledge he did wilfully and knowingly fail, refuse or neglect to go among the said twenty or more persons so assembled, or as near them as possible, and in the name of the State command them to disperse, and unless you so find you must acquit the defendant."

(6) The defendant next assigns as error the refusal of the court to give instruction No. 10, asked by him. The defendant had testified that he had been advised by the city attorney as to his duties as mayor with reference to

the crowd assembled near the telephone building; that he relied upon this advice, and acting upon it, in good faith, failed to go among the crowd and command it to disperse because he believed that it was not assembled for the purpose of preventing employees from entering the telephone building. The instruction in question would require the jury to acquit the defendant if they believed that he, in good faith, acted upon the advice of the city attorney and for that reason did not attempt to disperse the crowd. The defendant was presumed to know the law, and he could not escape its penalties by acting upon the advice of the city attorney or any one else. At most, his acting upon the advice of the city attorney, in good faith, could only go in mitigation of his punishment and such was not the purport of the instruction.

(7) The section of the statute under consideration makes it the duty of the sheriff and his deputies and other peace officers to go among persons to the number of twenty or more unlawfully assembled in a city or town, or as near them as possible, and in the name of the State command them to disperse. It was shown that the sheriff and his deputies and other officers knew of the crowd being assembled and made no effort to have the crowd dispersed and that the defendant knew this to be true. He asked the court to instruct the jury that it might properly take such evidence into consideration in determining whether or not the defendant had knowledge of the alleged unlawful character of such assembly. The court was correct in not giving this instruction. The fact that other officers did not discharge their duties, if such was the fact, would not excuse the defendant from the failure to discharge his duty. He could not justify his own failure to act by a like failure or his knowledge of failure on the part of other officers charged with the same duty.

(8) The defendant also assigns as error the refusal of the court to give instruction No. 21. It is as follows:

"The defendant is charged with having knowledge of an assemblage of twenty or more persons gathered about the telephone building for the illegal purpose of intimi-

dating and preventing the employees of the company from having access to said building, and in failing to require such unlawful assemblage to disperse.

"Any testimony to the effect that the defendant was advised that other acts of violence, such as shutting off the gas, cutting the electric wires, or shutting off the water, or climbing the fire escape, would not be sufficient to charge the defendant with knowledge of the character and purpose of the assemblage, as charged in the indictment."

The court properly refused to give this instruction, which would have invaded the province of the jury. It is proper to prove before the jury all the unlawful acts of the assembled crowd of which the defendant was informed as tending to show that the assembly was an unlawful one within the meaning of the statute and that the defendant had knowledge of that fact.

The refusal of the court to give other instructions at the request of the defendant are assigned as error. We do not deem these assignments of error of sufficient importance to warrant a detailed discussion of them. The matters embraced in the refused instructions were either covered by instructions already given by the court or were not correct statements of the law as applied to the facts of the present case.

(9) It is also insisted by counsel for the defendant that the court erred in refusing to withdraw the case from the jury on account of the bias and prejudice of one of the jurors. It was shown by the defendant by the testimony of witnesses introduced by him that one of the jurors had applied opprobious epithets towards him and had made use of other expressions in regard to his guilt in the case which showed that he had not truthfully stated the facts when he was questioned on his *voir dire*. The State introduced the juror as a witness, and he stated on oath that he had correctly answered that he had no prejudice against the defendant and knew nothing about the facts in the case. He denied expressly that he had made the statements attributed to him. Under these circumstances we can not say that the court arbitrarily refused

to grant a new trial on this account. *Van Hoozer* v. *Butler*, 131 Ark. 404; *Decker* v. *State*, 85 Ark. 64, and *Johnson* v. *State*, 120 Ark. 193.

(10) It is insisted that the court erred in refusing to allow the defendant to cross-examine the witness, Grady Manning, with reference to his prejudice. The record on that point contains the following:

"Q. Mr. Manning, how long have you been knowing Mayor Wright?

"A. Probably five or six months.

"Q. You don't feel very kindly to him, do you?

"A. I have nothing against him at all.

"Q. Do you mean to sit up here and tell the jury that?

"A. Yes, sir.

"Q. Haven't you been traipsing over this town ever since Mayor Wright has been in office and talking about him, because he got after you for selling cigarettes and running a gaming device? Objected to.

"A. Yes, sir. Objection sustained; you can ask him what this feeling is towards the defendant.

"Yes, sir; we propose to show that.

"The defendant proposes to prove by this witness that this witness has an ill-feeling toward Mayor Wright; that he has had such feeling practically ever since Mayor Wright has been in office, that he has expressed his feelings toward Mayor Wright on numerous occasions, and that this ill-feeling has been brought about because Mayor Wright has attempted to prohibit him and others from violating the laws by selling cigarettes and from conducting gaming devices known as punch boards at his place of business.

"Mr. Cravens: The State has no objection to asking this witness what his feelings are towards the defendant whether friendly or unfriendly, and how long said feelings, if they do exist, have existed."

The court erred in not permitting the witness to answer the question propounded to him. The bias of a witness is not a collateral matter; but it was most important

to the defendant to show that on numerous occasions the witness had expressed himself as having ill-feelings towards the defendant, and that the ill-feeling had been brought about because Wright as mayor had attempted to prohibit the witness and others from selling cigarettes and conducting gaming devices contrary to law. Pecuniary interest, personal affection or hostility, sympathy or animosity, a quarrel or prejudice may always be shown to discredit a witness. *Cornelius* v. *State,* 12 Ark. 782; *Crumpton* v. *State,* 52 Ark. 273; *Hollingsworth* v. *State,* 53 Ark. 387, and *McCain* v. *State,* 132 Ark. 497, 195 S. W. 363, and cases cited.

(11) In *Hollingsworth* v. *State, supra,* the court said: "The appellant should have been permitted to prove that the witness had an interest and bias in the cause, by his statement disclosing it. Whether he could make such proof by those who heard the statement without first interrogating the witness concerning it, we need not decide. Such would have been the better practice, and should be observed where it is practicable. That it must follow we do not hold, for highest authorities upon the subject differ." In a note to *Fagan* v. *Lentz* (Cal.), 20 A. & E. Ann. Cas. 221, at 224, it is said that in a majority of jurisdictions the rule prevails that before introducing testimony to discredit a witness by showing that he is biased for or against one of the parties, it is necessary to lay a foundation for such testimony by calling the attention of the witnesses to the declaration alleged to indicate bias or hostility; and many cases are cited to support the proposition. It may, also, be stated in this connection that before witnesses can be called to show that statements have been made out of court tending to show bias or prejudice on the part of the witness, it is necessary to lay the proper foundation by calling his attention to the time, place, and person involved in the supposed contradiction. Then, if he denies having made the declaration or done the act imputed, the contradictory evidence becomes proper. This is done for the purpose of refreshing the mind of the witness, and to give him an opportu-

nity to admit having made the statement attributed to him and in the case of inconsistent statements to explain the declarations intended to be used against him. In this way the witness has a fair opportunity to explain what, without such explanation, might appear to be suspicious. It will be observed that this mode of assailing the witness is not an attack on his general credit as a witness but is an attack upon his credit in the particular case. The scope of such attempts should be largely in the discretion of the trial court, but the right itself may not be denied in the discretion of the court. If the court should exclude the question because it did not contain a particular statement of the time, place, and occasion when such impeaching declarations were made, counsel should be informed so that he might lay the proper foundation.

In the present case, the record shows that the question was excluded, not because counsel had not laid the proper foundation, but because the court held that it was not competent. The court sustained an objection to the question and told counsel that he might ask the witness what his feelings were towards the defendant. The record shows that the witness remembered making expressions of ill-feeling towards the defendant on numerous occasions because the latter as mayor had tried to prohibit him from selling cigarettes and running a gambling device contrary to the statute. Hence it will be seen that he was particularly inquired of upon the subject. Besides the record shows that the witness remembered the statements he had made, and he did not need the protection of the court in having the question asked with more particularity with reference to time, place and occasion. Under the circumstances as disclosed by the record, it would have been a vain thing and a useless consumption of time to have inquired of the witness with more particularity. It has been suggested that the answer was inconsistent with the answer of the witness that he had no ill-feeling towards the defendant and for that reason was properly excluded. The court does not think the answer inconsistent. The witness, after having his attention called

to the matter, might have remembered expressing ill-feelings towards the defendant on numerous occasions, and, after doing so, might have changed his mind about having no prejudice against the defendant; or the witness may admit having made expressions tending to show his ill-feeling towards the accused and deny that he had any such ill-feeling.

(12) The question for the jury to consider is as to the existence of such prejudice, and that is to be derived as a matter of legal inference from the acts or expressions of the witness. The remarks made by both the court and the prosecuting attorney as contained in the record show that their ideas of the law was that the witness could only be asked what were his feelings towards the defendant. A witness might have an ill-feeling towards the defendant and not express it, and he might express such an ill-feeling for an ulterior purpose and not in reality have it. It is most important that the jury should know what he has said and done in the premises in order that it may determine for itself the extent of such prejudice. The fact that the witness had expressed ill-feelings on many occasions towards the mayor for trying to prevent the witness from violating the law by selling cigarettes and exhibiting gaming devices was competent for the purpose of showing the extent and nature of the hostile feeling so that the jury might determine how much allowance to make for it.

Again it has been suggested that no prejudice could have resulted to the defendant from the exclusion of this testimony because the witness did not testify to any material fact in the case which was disputed. This contention is made in the application of the well known rule that this court will only reverse for error prejudicial to the rights of the defendant. The State filed an amended abstract of the testimony in this case.

Grady Manning testified that about 11 o'clock at night, he went to the southwest corner of the telephone building where the crowd was assembled and found that they were trying to cut off a piece of the pipe; that the

mayor was not present at that time but later it was reported that he was coming; that he came down the street and stopped on the other side of it; that the person stopped digging and in a few minutes commenced again; that witness walked back over there and the mayor walked over that way; that the mayor walked over to the crowd and stood there a few minutes.

On cross-examination as abstracted by the State we quote the following:

### "CROSS-EXAMINATION.

"He was there when they were digging at the southwest corner of the building near the sidewalk. This was a little back between the sidewalk and curbstone. Quite a bunch were digging; they had a large rock trying to break it in; one man had a rock and was pounding over the pipe. The mayor was not there at first, but was there later. He was there while the business I describe was going on, but he first walked down the street where his machine was. He then walked to where they were digging, as near as he could get. He could see the digging. I think he saw it, if he was as close as witness was, which was probably five feet. He was probably standing five feet from where they were digging. Did not hear defendant say anything. Could give no idea how many people were there when the digging was going on. There were a number of the striking girls and others."

### "REDIRECT EXAMINATION.

"I would judge roughly that there were three or four hundred people around there on the sidewalk, street and lawn. While there I heard them say 'they were going after the gas.'"

The testimony of this witness tended to show directly that the mayor saw them digging up the gas pipe.

Other witnesses testified only to the fact that he was in the crowd that night but they did not know whether or not he went to where the persons were digging up the gas pipe. Be that as it may, the witness in question testified

to material facts on that point, and the defendant had a right to impeach him by showing ill-feeling on the part of the witness towards himself. It can not be said that the testimony in question was undisputed because it was expressly contradicted by the defendant and the testimony of numerous other witnesses in his behalf tended to contradict it.

For the reasons given, the court erred in excluding from the jury the question propounded to the witness Grady Manning, and his answer thereto as set out above. For that error the judgment will be reversed and the cause remanded for a new trial.