**Bob Dale McDANIEL, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–78–398.**

Court of Criminal Appeals of Oklahoma.

Dec. 21, 1979.

As Amended Jan. 23, 1980.

---

Thomas W. Burns, Deputy Chief Public Defender, Tulsa County, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., James G. Wilcoxen, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

On January 17, 1976, the appellant, Bob Dale McDaniel, escaped from the State prison in McAlester, Oklahoma, where he was serving a 200 year sentence for rape. On March 12, 1976, a grocery store in Collinsville, Oklahoma, was robbed at gunpoint, and a man was charged with the crime. Authorities failed to perceive any correlation between these events until May 12, 1976. On that date it was discovered that the accused in the armed robbery trial was the appellant, and not James Alfred Donald, Jr., as indicated in the information. The following events form the basis for this appeal.

Within moments of the robbery, Collinsville Police Officer Bob Slagle began pursuit of a blue Pontiac, which he observed traveling at an excessive rate of speed. Pursuit had just been initiated when Officer Slagle was advised by the radio dispatcher of the robbery and that the suspect had last been observed fleeing the robbery scene in a blue vehicle. The pursuit evolved into a high speed chase with speeds reaching 110 miles per hour. It ended north of Collinsville near Vera, Oklahoma, when the suspect vehicle came to a stop with its front end in a ditch. The driver of the vehicle fled across a field, eluding the officer on foot.

Moments later, Trooper Punneo, of the Oklahoma Highway Patrol, arrived at Officer Slagle's location. After an unsuccessful attempt to immediately locate the suspect, Trooper Punneo returned to the suspect vehicle. A check was run on the vehicle's identification number which revealed the owner to be James Alfred Donald. Additionally, printed checks on the account of James Alfred Donald were found in the vehicle. Three to four hours later, at approximately 11:30 p.m., Trooper John Epple, of the Oklahoma Highway Patrol, and Deputy Jim Eppler, of the Washington County Sheriff's Department, apprehended a suspect lying in a ditch a few miles distant from the spot where the suspect vehicle had been abandoned. The suspect identified himself as James A. Donald.

On March 16, 1976, an information was filed in the Tulsa County District Court charging James Alfred Donald, Jr., with armed robbery after a former felony conviction for rape. On March 18, 1976, a pauper's affidavit was filed alleging the defendant was without funds to hire an attorney. The pauper's affidavit was signed under penalty of perjury by James A. Donald, Jr., as affiant.

On May 12, 1976, the case was called for jury trial in the Tulsa County District Court, the Honorable Margaret Lamm presiding. The defendant at that time announced ready for trial as James Alfred Donald, Jr., the jury was selected, and the trial was begun. At the conclusion of the State's case in chief, the prosecutor, Clifford Hopper, was advised by another attorney, who had represented James Alfred Donald, Jr., in the past, that the defendant was not who he purported to be. When Mr. Hopper confronted the defendant with this accusation, the defendant admitted he was not James Alfred Donald, Jr., and that his true name was Bob McDaniel. Mr. Hopper advised Judge Lamm of this development and requested a continuance until the next day in order that the true identity of the defendant could be established. The continuance was granted and the defendant was returned to the Tulsa County jail where it was learned that his true name was Bob Dale McDaniel, an escapee from the State prison in McAlester, Oklahoma.

That evening, Mr. Hopper returned to his residence where he was advised that a newspaper reporter from the Tulsa Daily World had called. Mr. Hopper returned the

call and, in response to the questioning by the reporter, revealed the true identity of the defendant, that the defendant was an escappee, the crime for which the defendant had been previously convicted, and also that the whereabouts of the real James Alfred Donald, Jr., was unknown. The morning issue of the May 13, 1976, Tulsa Daily World carried a front-page article of the trial developments, including the information supplied by Mr. Hopper. That same morning Judge Lamm declared a mistrial sua sponte. Although no record of the proceeding has been included in the appellate record, and this appeal could be dismissed on that ground alone, we will accept as true the defendant's allegation that the mistrial was declared because some of the jurors had read the newspaper article and indicated to the judge that they could no longer be impartial.

On May 25, 1976, the defendant filed a motion to dismiss on the ground that a retrial would violate his right not to be twice placed in jeopardy. This motion was denied and the defendant was retried and convicted on September 14, 1976. The sentence was set at 250 years' incarceration in the State prison. Subsequently, this Court reversed the conviction on other grounds and ordered a new trial. On May 16, 1978, the defendant appeared for retrial in the Tulsa County District Court, the Honorable Raymond W. Graham presiding. After a motion to dismiss on the ground of double jeopardy was denied, the defendant waived his right to a jury trial, stipulated to the evidence introduced at the second trial, and was found guilty of the offense charged. Sentence was set at eight (8) years' incarceration in the State penitentiary. From this conviction the defendant has brought this appeal, asserting as the sole ground for reversal and dismissal his right not to be twice placed in jeopardy for the same offense.

The defendant contends that the mistrial declared by Judge Lamm was the product of prosecutorial misconduct and urges this Court to adopt the rule that when a mistrial is necessitated by such misconduct the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars retrial of the accused. Several cases, which the defendant concedes are not directly on point, are cited in support of the proffered rule. We have examined the cited cases and find that each can be distinguished from the present case in one important aspect: in each case where the doctrine of double jeopardy was held to bar a retrial neither the defendant nor this attorney was in any way responsible for the declared mistrial. See *United States v. Kessler*, 530 F.2d 1246 (5th Cir. 1976); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). In *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), the United States Supreme Court reversed a lower court decision which had barred retrial of the defendant on the ground of double jeopardy. The Court noted that the mistrial was caused by the misconduct of the defense attorney and was not declared in bad faith nor motivated by a desire to harass or prejudice the defendant. And in *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), also cited in the appellant's brief, the United States Supreme Court noted that if a judge discovers one or more members of a jury may be biased one way or the other, it is the judge's duty to discharge the jury and direct a retrial.

This Court believes that any attempt to categorize Mr. Hopper's conduct as in bad faith or designed to prejudice the rights of the defendant would be highly speculative. The fact of the defendant's escape and the offense for which he had been sentenced were readily available from other sources as a matter of public record. Absent proof to the contrary, we find that Mr. Hopper's conduct was motivated by nothing more than a desire to supply the news media with information available to the press as a matter of right from equally available official sources.

 After a detailed review of the record, this Court can reach but one conclusion: The defendant's own attempt to perpetrate a fraud on the trial court by concealing his true identity was the proxi-

mate cause from which the conduct of the prosecuting attorney and trial court flowed. To dispense with any ambiguity that might exist we expressly hold that in the absence of evidence of bad faith conduct by the prosecutor or trial court, intended to harass or prejudice the rights of an accused, a defendant will not be heard to complain of the proximate result of his own misconduct at trial. See *Pierce v. State*, Okl.Cr., 383 P.2d 699 (1963). See also *Shimley v. State*, 87 Okl.Cr. 179, 196 P.2d 526 (1948). We hold that nothing in the United States Constitution requires that the defendant be allowed to benefit from the exposure of his intended fraud. Were the defendant to prevail in his argument, it would reduce the constitutional prohibition against double jeopardy to a continuing invitation for criminal defendants to intentionally introduce extreme provocation into the trial in the hope that the prosecutor or trial court would be induced to misconduct necessitating a mistrial. We decline to hold that the United States Constitution extends such an invitation.

The judgment and sentence is *AFFIRMED*.

CORNISH, P. J., and BUSSEY, J., concur.