Leroi **FERBY**

v.

**W. D. BLANKENSHIP.**

**Civ. A. No. 80–0296–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 24, 1980.

Leroi Ferby, pro se.

Robert E. Bradenham, II, Asst. Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM

WARRINER, District Judge.

### A.

LeRoi Ferby, an inmate at the Bland Correctional Center, proceeding *pro se* and *in forma pauperis*, brings this petition for a writ of habeas corpus seeking relief from convictions of robbery and use of a firearm in the commission of a felony, entered by the Circuit Court of the City of Petersburg on 9 October 1970. The sole ground for relief relied on by petitioner is that his convictions were obtained in violation of the protection against double jeopardy.

Petitioner has had three trials. The first trial, held on 7 June 1979, resulted in a mistrial when the jury failed to reach a verdict. The second trial, held on 13 September 1979, was declared a mistrial after petitioner's counsel, on cross-examination of a police officer, elicited evidence that petitioner had approached the police with an offer to take a polygraph test. Finally, petitioner's third trial, a jury trial held on 9 October 1979, resulted in convictions.

Petitioner's position is that the trial court erred in granting the prosecution's motion for a mistrial at the second trial because there was no manifest necessity. Petitioner claims that the evidence of his offer to take a polygraph test was not prejudicial to the State, but that even if it were, remedies less drastic than a mistrial could have cured the problem. Specifically, petitioner suggests that instructing the jury to ignore the evidence would have been sufficient to eliminate the risk of jury bias.

Petitioner filed a petition for appeal in the Virginia Supreme Court, raising his double jeopardy claim. The Virginia Supreme Court, however, refused the petition because the double jeopardy issue had not been raised at trial and could not be heard for the first time on appeal because of Rule 5:21, Rules of the Supreme Court of Virginia.

The respondent admits exhaustion of State remedies, but states that under the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d ˚594 (1977), failure to comply with Rule 5:21 bars federal habeas review of the merits of petitioner's claim. In the alternative, respondent states that the State trial court did not abuse its discretion in declaring a mistrial at the second trial.

The court is of the opinion that the petitioner's double jeopardy claim is meritless because the trial court did not abuse its discretion. A discussion of whether the *Wainwright* doctrine applies to bar double jeopardy claims not raised in accordance with State procedural rules is, therefore, unnecessary.

### B.

 The remarks elicited from the Commonwealth's witness, Officer Carmichael, by the petitioner's attorney at the second trial were as follows:

Q. Now, have you seen and talked to Mr. Ferby since he's been arrested? (pause) Have you had any conversation with him since he was arrested?

A. I think he approached me at Headquarters, yes.

Q. What, if anything, did he say?

A. He wanted to know about a polygraph test.

Q. He wanted to take a lie detector test?

A. Yes.

MR. BARNEY: Judge,—. Wait a minute, now. That—

THE COURT: Take the jury out, Mr. Parker.

*Tr. 15.* Under Virginia law, evidence that the defendant was willing to take a poly-

graph test is clearly inadmissible. *Barber v. Commonwealth*, 206 Va. 241, 142 S.E.2d 484 (1965), *see also Skinner v. Commonwealth*, 212 Va. 260, 183 S.E.2d 725 (1971). This, however, does not end the inquiry. Unless there was a "manifest necessity" for the declaration of the mistrial, petitioner's right to be free from double jeopardy was violated. *United States v. Perez*, 9 Wheat 579, 6 L.Ed. 165 (1824).

An analysis of "manifest necessity" must begin with the following caveat. "[The words] 'manifest necessity' do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Arizona v. Washington*, 434 U.S. 497, at 506, 98 S.Ct. 830, at 826, 54 L.Ed.2d 717, at 728 (1978).

In *Arizona*, the trial judge granted the prosecutor's motion for a mistrial based on an improper comment during the defense counsel's opening statement. The defendant was subsequently convicted and, thereafter, sought federal habeas relief. The Supreme Court concluded that the defense counsel's remarks were improper and "may have affected the impartiality of the jury." *Id.* 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732. The Court continued:

> We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with trial after giving the jury appropriate cautionary instructions. In a strict legal sense, the mistrial was not "necessary."

*Id.*, 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732. Nevertheless, the Court denied the petition. The Court described the "spectrum of trial problems which may warrant a mistrial." *Id.*, 434 U.S. at 507–11, 98 S.Ct. at 831–33, 54 L.Ed.2d at 729–731. Recognizing that some trial problems are more amenable to appellate scrutiny than others, *Id.*, 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 731, the Court held that a determination by the trial judge that jury bias may have affected the integrity of the verdict is entitled to "special respect." Thus, when a mistrial has been declared because of possible jury bias, a reviewing court should not be guided by its view as to whether or not the mistrial was strictly necessary. *Id.*, 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732. Rather,

> the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

*Id.*, 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d at 732.

Emphasizing that "[t]he consistent course of decision in this Court in cases involving possible juror bias supports this conclusion," *Id.*, 434 U.S. at 512, 98 S.Ct. at 833, 54 L.Ed.2d at 732, the Court reviewed *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), and *Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894).

In *Simmons*, the federal trial judge declared a mistrial because of possible jury bias caused by a newspaper story describing a letter written by the defense counsel denying that one of the jurors knew the defendant. It was undisputed that the newspaper story had been read by the juror in question, as well as by other jurors. Although the trial judge did not determine whether the juror in fact knew the defendant, or whether the newspaper story had any influence upon the other jurors, the Supreme Court agreed that the circumstances warranted a mistrial, and affirmed the subsequent conviction in the face of the defendant's double jeopardy challenge.

In *Thompson*, the federal trial judge declared a mistrial after he learned that one of the trial jurors had been on the grand jury that indicted the defendant. It was possible that the grand jury may have heard less evidence than was presented at Thompson's trial. Nevertheless, the mistrial declaration in *Thompson* was upheld, even though the trial judge did not question the juror as to the extent of his knowledge of the case.

Several years ago, the Fourth Circuit recognized that a trial judge's determination of "manifest necessity" in the context of possible jury bias, is entitled to special respect. In *Whitfield v. Warden*, 486 F.2d 1118 (4th Cir. 1973), the state trial judge declared a mistrial because one of the jurors entered the Courtroom while the judge and the attorneys were going over motions for judgments of acquittal at the bench. The trial judge never questioned the juror as to what he had heard when he walked in, but declared a mistrial on the possibility that the juror had been improperly influenced by what he had heard. The Fourth Circuit rejected the petitioner's double jeopardy claim, noting the Supreme Court cases (including *Simmons* and *Thompson*) dealing with the relaxed scrutiny given to the trial judge's determination of necessity in jury bias cases:

> Significantly, in each case, after the trial judge had ascertained that a juror had received an improper communication, the reviewing court did not require the judge to determine whether the communication had in fact prejudiced the juror. Discovery of the harmful communication in itself afforded grounds for mistrial.

*Id.* at 1122.

### C.

Petitioner Ferby relies heavily on *Harris v. Young*, 607 F.2d 1081 (4th Cir. 1979), wherein the Court of Appeals ruled that manifest necessity for a mistrial did not exist because of the availability of less drastic alternatives. Harris was convicted after a mistrial was declared by the trial judge because the attorneys had failed to comply with discovery procedures.

 As already indicated at length, *supra*, the application of the manifest necessity test turns upon the specific factual circumstances surrounding the mistrial. *Harris* involved a situation which could be reviewed comfortably by an appellate court. It did not involve a difficult assessment of potential jury bias. The evaluation of the possible alternatives to a mistrial made by the trial judge in *Harris* was not entitled to any "special respect." See also *Whitfield*, at 1121–1122, rejecting a *Harris*–type challenge in a jury bias setting.

A very recent case wherein a *Harris*–type challenge was rejected is *Shuler v. Garrison*, 631 F.2d 270 (4th Cir. 1980). Shuler was convicted after a mistrial was declared because of possible jury bias. At the first trial, an attorney not involved with the case informed the judge that during a recess he had overheard someone telling a group of people wearing juror badges that the evidence against the petitioner was insufficient. The trial judge questioned the jury and they denied having heard the comment. During another recess, a juror was told, this time by a Deputy Sheriff, that the evidence against petitioner was insufficient. When this conversation came to the trial judge's attention he declared a mistrial even though he could have substituted an alternate juror. The trial judge noted that, because of crowded conditions in the courthouse, any verdict in the case would have been suspect. The Court of Appeals rejected Shuler's *Harris* argument, and held that "[s]ince any verdict would have been suspect, even if a substitute had been appointed for juror Powell, the judge properly exercised his discretion to order a new trial." *Id.* at p. 272.

The record in the present case reveals that the trial judge did, in fact, consider the possibility of giving corrective jury instructions rather than declare a mistrial. Tr. 18–19. His rejection of this possibility clearly demonstrated his belief that instructions could not preserve the integrity of the verdict. This is sufficient to satisfy the requirements of *Harris*.

Finding no violation of petitioner's constitutional rights, the petition for a writ of habeas corpus must be denied.

An appropriate order shall issue.