Glenn Lloyd WILSON *v.* STATE of Arkansas

CR 85-149                                          712 S.W.2d 654

Supreme Court of Arkansas
Opinion delivered May 27, 1986

*Gordon L. Cummings*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

ZIMMERY CRUTCHER, JR., Special Justice. Glenn Lloyd Wilson, appellant, was charged with Battery in the First Degree for causing serious physical injury to Lloyd Stewart on or about June 24, 1984, by means of a deadly weapon or under circumstances manifesting extreme indifference to human life, in violation of Ark. Stat. Ann. § 41-1601.

The case came on for trial on February 25, 1985, before a jury duly impaneled, and after opening statements, the State called the prosecuting witness as its first witness. On cross-examination, appellant's attorney asked about a $1,000,000 civil suit which the prosecuting witness had filed against appellant arising from the alleged battery. The attorney implied by one of

his questions that, had appellant paid the prosecuting witness $18,000, the criminal charges would have been dismissed. Before this question was answered, the prosecuting attorney objected and asked for a mistrial. A mistrial was declared over appellant's objection and the jury was discharged.

The trial court set the case for retrial on the following morning, February 26, 1985, and ordered a new jury called to which the appellant objected on the basis of double jeopardy.

Appellant filed a Notice of Appeal alleging for reversal that the trial court erred in granting a mistrial and in denying appellant's motion to dismiss on the ground of double jeopardy.

■■ We agree with the appellant that the trial court erred in granting a mistrial. The trial judge has considerable discretion in determining the scope of cross-examination. Rule 403 of the Uniform Rules of Evidence states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Also, Rule 408 of the Uniform Rules of Evidence states:

> Evidence of (1) furnishing, offering or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

However, this court has consistently taken a broad view of the right of an accused in a criminal prosecution to be confronted with the witnesses against him. *Simpson* v. *State*, 274 Ark. 188, 623 S.W.2d 200 (1981). Cross-examination can serve as a means

to test the truth of the witness's direct testimony and the witness's credibility. A broad view of cross-examination is especially important where it might reveal bias on the part of a key witness. *Klimas* v. *State*, 259 Ark. 301, 534 S.W.2d 202 (1976); *Haight* v. *State*, 259 Ark. 478, 533 S.W.2d 510 (1976).

Here, if the cross-examination had been allowed, the jury would have been informed that the prosecuting witness may have been biased due to a financial interest. On the other hand, the jury may have thought that the civil complaint and damages sought were well founded and that the evidence supported the prosecuting witness's testimony. *Boreck* v. *State*, 277 Ark. 72, 639 S.W.2d 352 (1982).

The sequence of questions on cross-examination of the prosecutor's chief witness by appellant was as follows:

MR. CUMMINGS: Did you get a lawyer and sue Mr. Wilson?

MR. STEWART: Yes.

MR. CUMMINGS: Have you gone over the facts and your testimony with your lawyer?

OBJECTION (PROSECUTING ATTORNEY): Now, Judge, I am going to object again. I don't think that has any relevance, not that civil suit, to this criminal action.

THE COURT: Not what he has gone over with an attorney not a party to this action. That would not be admissible.

MR. CUMMINGS: You have a definite financial interest in the outcome of this case, don't you, Mr. Stewart?

MR. STEWART: Well, not financial, I want justice done.

MR. CUMMINGS: Uh huh. As a matter of fact, if Mr. Wilson had had $18,000.00 to pay you, we wouldn't be here today, would we?

■ This court has always held that pecuniary interest, personal affection or hostility, a quarrel or prejudice may always be shown to discredit a witness. *Wright* v. *State*, 133 Ark. 16, 201 S.W. 1107 (1918).

■ Therefore, the trial court was in error in granting a mistrial.

The appellant's second point of contention is that the trial court erred in overruling his motion to dismiss the charges on the ground of double jeopardy.

Article 2, Section 8 of the Arkansas Constitution says, ". . . and no person, for the same offense, shall be twice put in jeopardy of life or liberty."

■ When the jury is finally sworn to try the case, jeopardy has attached to the accused and when, without the consent of the defendant, expressed or implied, the jury is discharged before the case is completed, then the constitutional right against double jeopardy may be invoked, except in cases of "overruling necessity" *Jones* v. *Ark.*, 230 Ark. 18, 320 S.W.2d 645 (1959). We have found overruling necessity in cases where the defense counsel was intoxicated or a juror was ill. *See Franklin and Reid* v. *State*, 251 Ark. 233, 471 S.W.2d 760 (1971) and *Atkins* v. *State*, 16 Ark. 568 (1855).

We find no such overruling necessity here.

Therefore, since a mistrial was improperly granted and jeopardy has attached, the appellant cannot be retried.

Reversed and dismissed.

PURTLE, J., not participating.

NEWBERN, J., concurs.

HOLT, C.J., dissents.

HAYS, J., dissents.

DAVID NEWBERN, Justice, concurring. The majority opinion fully states my view in this case. I feel compelled, however, to respond briefly to the dissenting opinion. Its fallacy is demonstrated by these words taken from the second paragraph:

Thus, on the basis of a question Wilson's counsel should not have asked the State of Arkansas is deprived of the opportunity to try an individual for a serious breach of the criminal laws.

It was not the question asked by the defendant's lawyer that deprived the state of the opportunity. Rather, it was the overreaction of the court to that question. As the majority opinion points out, our cases require that an accused not be subjected to double jeopardy unless the mistrial occurred on the basis of an overruling necessity.

The dissenting opinion goes to some length to argue that the question asked by the defense counsel was improper. Even if the cases cited are somewhat supportive of the contention that the question was improper because it was merely cumulative or, on balance, more prejudicial than probative, the point is that the court was hardly confronted with a situation which could not have been handled by a means other than a mistrial.

STEELE HAYS, Justice, dissenting. Glenn Lloyd Wilson was charged with first degree battery in the stabbing of Lloyd Stewart. Stewart had filed a civil suit against Wilson seeking damages of $1,000,000, which was pending while the criminal case was being tried. When counsel for the defense asked Stewart on cross-examination whether, in effect, Stewart would have dropped the criminal charges if Wilson had paid him $18,000, the prosecution moved for a mistrial and the trial court subsequently granted the motion.

On these proceedings the majority concludes the appellant cannot now be tried at all because of double jeopardy. Thus, on the basis of a question Wilson's counsel should not have asked the State of Arkansas is deprived of the opportunity to try an individual for a serious breach of the criminal laws. I respectfully dissent.

I don't question the defendant's right to bring out the fact that the prosecuting witness is also suing the defendant in a civil case. But that was amply done here. Defense counsel in voir dire, opening statement and questioning had told the jury that Stewart was suing Wilson for a million dollars, providing all the basis necessary to argue bias. When counsel then implied that Stewart

had not only offered to settle for $18,000 but that the criminal charges would also be dropped in the process, I believe he went too far and the trial court was well within its prerogative in ruling the question improper and, if it deemed the fairness of the trial sufficiently impaired, to grant a mistrial.

The majority declares that to deny the defendant that question is reversible error. I believe it was within the trial court's discretion by any of several rules of procedure and evidence and the fact the defense tacitly agreed is found in the record — after the prosecution moved for a mistrial, defense counsel asked the court to admonish the jury to disregard the question. This was cumulative evidence, which is properly excludable. Rule 403, Unif. R. Evid., *Lee* v. *State*, 266 Ark. 870, 587 S.W.2d 78 (1979). Moreover, even relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice, delay, waste of time, confusion of the issues or having a tendency to mislead the jury. *Pitts* v. *State*, 273 Ark. 720, 617 S.W.2d 849 (1981).

In holding the evidence admissible under Unif. R. Evid. Rule 408 to show bias or prejudice, the majority overlooks the express intent of Rule 403 to exclude evidence otherwise admissible where its probative value is overcome by its prejudicial effect.

The question, I believe, has obvious prejudicial overtones, implying that the defendant is being prosecuted at public expense simply to enrich the prosecuting witness, whereas the probative force, over and above the facts already brought out, has only limited value. In *Boreck* v. *State*, 277 Ark. 2, 639 S.W.2d 352 (1982), we reversed a trial court's refusal to permit the defense to ask the prosecuting witness in a rape trial if she had agreed to drop the charges in payment of the medical bills. But there was no pending civil case, and no other means of proving bias, no civil case being involved. Furthermore, there was no uncertainty as to the witness's extrajudicial agreement — she had actually agreed to drop the charges in consideration of an agreement to pay her medical bills and had dictated a statement to the police avowing those terms. In contrast, there is nothing here to show that Stewart has agreed to drop either the civil or the criminal case, assuming he has the power, nor any proffer that he has offered to settle the civil case for *any* amount. At the very least, the

defendant should be required to proffer a factual basis for his question before we brand it error, otherwise we have held reversible error and, hence, double jeopardy to have occurred purely on theoretical grounds. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985); *Williams* v. *State*, 258 Ark. 207, 523 S.W.2d 377 (1975).

I believe the incident in this trial was prompted by the excessive advocacy of defense counsel, rather than by any abuse by the prosecution or the trial judge. The record reveals that during opening statement defense counsel told the jury Mr. Stewart had hired Mr. Walter Niblock to file a civil suit, prompting an objection that a civil action had no bearing on criminal charges, which the court sustained. Thereafter during cross-examination of Stewart defense counsel renewed the topic:

> Q: Did you get a lawyer and sue Mr. Wilson?
>
> A: Yes.
>
> Q: Have you gone over the facts and your testimony with your lawyer?
>
> PROSECUTOR: Now, Judge, I am going to object again. I don't think that has any relevance, not that civil suit, to this cause of action.

When the judge sustained the objection again, defense counsel continued:

> Q: You have a definite financial interest in the outcome of this case don't you Mr. Stewart?
>
> A: Well, not financial, I want justice done.
>
> Q: Uh huh. As a matter of fact if Mr. Wilson had had $18,000 to pay you, we wouldn't be here today would we?

The majority opinion focuses on the question about the $18,000 and ignores entirely the preceding question which came after the judge had sustained an objection for the second time.

The question created an obvious inference that Stewart would benefit financially if Wilson were convicted. That, of course, is patently incorrect, as the outcome of the criminal case would have no bearing whatever on the civil case. *Wright* v. *Wright*, 248 Ark. 105, 449 S.W.2d 952 (1970); *Smith* v. *Dean*, 226 Ark. 438, 290 S.W.2d 439 (1956). That, I believe, was the more offensive question and the follow-up question about the $18,000 was simply the finishing touch.

Many courts have recognized, properly I believe, that where it is the conduct of the defendant or defense counsel that occasions the mistrial, the defendant will not be heard to complain on double jeopardy grounds. *McDaniel* v. *State*, 604 P. 2d 147 (C.A. Okla. 1979); *United States* v. *Dinitz*, 424 U.S. 600 (1976). *Haight* v. *State*, 259 Ark. 478, 533 S.W.2d 510 (1976).

In *McDaniel* v. *State, supra*, the Oklahoma Court of Appeals said:

> To dispense with any ambiguity that might exist we expressly hold that in the absence of evidence of bad faith conduct by the prosecutor or trial court, intended to harass or prejudice the rights of an accused, a defendant will not be heard to complain of the proximate result of his own misconduct at trial. See *Pierce* v. *State*, Okl.Cr., 383 P.2d 699 (1963). See also *Shimley* v. *State*, 87 Okl.Cr. 179, 196 P.2d 526 (1948). We hold that nothing in the United States Constitution requires that the defendant be allowed to benefit from the exposure of his intended fraud. Were the defendant to prevail in his argument, it would reduce the constitutional prohibition against double jeopardy to a continuing invitation for criminal defendants to intentionally introduce extreme provocation into the trial in the hope that the prosecutor or trial court would be induced to misconduct necessitating a mistrial. We decline to hold that the United States Constitution extends such an invitation.

In *Ferby* v. *Blankenship*, 501 F. Supp. 89 (E.D. Va. 1980) defense counsel, while cross-examining a police officer, asked if the defendant had offered to take a lie detector test. The prosecution moved for a mistrial which the court granted. The District Court held the defendant had not been subjected to

double jeopardy.

In *People* v. *Bell*, 283 N.W.2d 763 (C.A. Mich. 1979), defense counsel in opening statement told the jury that a prior judicial declaration of the defendant's incompetency to stand trial had already been made by the trial court. This was held on appeal to be incorrect and while incompetency was an issue, the claim that defendant had been so declared was not: "It is one thing to refer to evidence of a claimed fact. It is another thing to refer to a judicial declaration of that fact." The Court of Appeals determined that a manifest necessity had occurred.

In *Barnett* v. *Florida*, 382 So.2d 412 (C.A. Flor. 1980), the trial court declared a mistrial after an outburst by the defendant in the presence of the jury which related to exculpatory matters allegedly told to a witness by a third party. The trial court found the remarks were so prejudicial to the state's case that a fair trial would be impossible and an admonition ineffective. The Florida court found "manifest necessity.":

> Although the defendant has a valued right to have his trial completed by a particular tribunal, such right is subordinated to the public's interest in fair trials designed to end in just judgment; thus the double jeopardy protection does not preclude a second trial when the initial trial is discontinued under circumstances manifesting necessity for so doing, and when the failure to discontinue should affect the ends of justice. *Wade* v. *Hunter*, 336 U.S. 684 (1949).

In *Jones* v. *Commonwealth*, 400 N.E.2d 242 (S.C. of Mass. 1980), while the Supreme Court found the mistrial was chargeable to the trial judge, rather than defense counsel, the opinion states:

> The Commonwealth also argues that a defendant who misbehaves should not be able to escape retrial if the judge thereby declares a mistrial. We agree. "It would be a reproach to the administration of justice if a defendant, through his counsel, could pollute the atmosphere of a trial and then turn this to his own advantage on appeal. *Commonwealth* v. *Lewis*, 346 Mass. 373, 379, 191 N.E.2d 753, 758 (1963), cert. denied, 376 U.S. 933 (1964).

Our own cases have recognized the soundness of this policy.

In *Haight* v. *State, supra,* defense counsel told the jury in opening statement that there had been plea bargain discussions and even mentioned length of sentence the prosecutor had recommended. Without phrasing it in terms of "manifest necessity," we said the remarks were prejudicial and an admonition would not have been sufficient.

I submit this case is plainly governed by *Haight.* If mention of a plea bargain is too damaging for correction, I believe the prejudice which surely accompanied counsel's telling the jury, incorrectly, that the prosecuting witness would gain financially by a conviction is of the same stripe. Some indication of that appraisal is found in the fact that defense counsel asked the court to admonish the jury to disregard his own question.

The obvious and alarming effect of this decision is that while the defense can move for a mistrial with impunity, the prosecution can ill afford to do so, for unless the prosecution prevails on appeal the defendant is discharged. This strikes me as patently unfair, as the state is entitled to a fair trial, too, yet it can not move for a mistrial where the stakes are an outright dismissal of the charges, even though the defense may have prejudiced the jury. "Neither side has a right to have his case decided by a jury which may be tainted by bias." *Arizona* v. *Washington,* 98 Sup.Ct. 824 (1978).

This opinion should not end without repeating the cogent view of Justice Harlan in *United States* v. *Tateo,* 377 U.S. 466, 84 S.Ct. 1589, 12 L.Ed.2d 451:

> While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in

protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest.

HOLT, C.J., joins this dissent.