Billy W. HIVELY and Mary L. HIVELY, Individually and on Behalf of Their Son and Next Friend, Richard REINS, a Minor *v.* H. O. EDWARDS, M.D.

82-82                                                646 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered February 21, 1983
[Rehearing denied March 28, 1983.*]

*ADKISSON, C.J., would grant rehearing.

436

*Henry & Walden,* by: *Troy Henry,* for appellants.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

STEELE HAYS, Justice. Bill and Mary Hively filed this suit on behalf of their eleven-year-old son, Richard, alleging medical malpractice by Dr. Harvey Edwards, appellee. On November 13, 1977, Richard suffered a fracture to bones of his right leg. Dr. Edwards set the fracture by closed reduction

and applied a cast. The following morning Richard had a high fever and severe swelling of the leg. Fever, swelling and marked discoloration of the toes and foot persisted and a fasciotomy to combat the inflammation was done on November 16. On November 17 the youth was transferred to a Memphis hospital and amputation was narrowly averted. Treatment required several hospital stays and the final result was a severe and permanent injury, the injured leg being one and a half inches shorter, the right ankle being fused.

The Hivelys brought suit in 1979, claiming that Dr. Edwards was negligent in failing to diagnose an anterior compartment syndrome and by failing to take corrective measures promptly. There was forceful medical testimony that Dr. Edwards was negligent in diagnosis and in treatment, but this was disputed and the jury held for the defendant. Appellants ask us to reverse the trial court on several grounds, but we find no reversible error.

Appellants urge that they should have been permitted to ask Dr. Glen Dickson, a witness for the defense, whether he had previously reviewed medical records and written a report to St. Paul Insurance Company, giving his opinion of Dr. Edwards' handling of the case. The issue came up during cross-examination of Dr. Dickson, who had seen Richard in consultation with Dr. Edwards. After establishing that Dr. Dickson had reviewed the records some four years earlier and had written a report, counsel for appellants asked who had sent him the records for his review. The issue was taken up in chambers, and following a hearing the trial judge held the evidence of insurance had some relevance as showing a possible bias by the witness, but that the prejudice which would result from the jury knowing insurance was involved outweighed any probative value.

We think the trial court correctly followed the requirements of Rule 403, Uniform Rules of Evidence, Ark. Stat. Ann. § 29-1001 (Repl. 1979), by weighing conflicting factors before deciding whether to admit or reject the evidence. We cannot say that it abused its discretion by not admitting the evidence of insurance. See *Hamblin* v. *State*, 268 Ark. 497,

597 S.W.2d 589 (1980). We have often said that juries should not be needlessly informed about insurance coverage because of the prejudice inherent in such information. *York* v. *Young*, 271 Ark. 266, 608 S.W.2d 20 (1980); *Pickard* v. *Stewart*, 253 Ark. 1063, 491 S.W.2d 46 (1973); *Strahan* v. *Webb*, 231 Ark. 426, 330 S.W.2d 291 (1959); *Pekin Stave & Mfg. Co.* v. *Ramey*, 104 Ark. 1 (1912). In *Hogan Co.* v. *Nichols, et al*, 254 Ark. 771, 496 S.W.2d 404 (1973), we said that evidence of liability insurance is ordinarily excluded because of its lack of relevance; that because of the inherently prejudicial effect of such evidence, it should only be admitted when it has some probative value relevant to the issues.

Appellants counter with the argument that modern juries are conscious of the likelihood of liability insurance in malpractice cases, rendering prejudice minimal, and the possibility of bias, interest and credibility of the witness being affected is of greater probative weight than any possible prejudice. They point to instances where we have held evidence of insurance to be admissible in spite of prejudice. In *Murray* v. *Jackson*, 180 Ark. 1144, 24 S.W.2d 960 (1930), we declined to reverse the trial court in permitting testimony concerning insurance in a case involving disputed personal injuries. The plaintiff had introduced evidence that her injuries were permanent. The defendant then offered the testimony of a physician who said he examined the plaintiff at the hospital, that her injuries were not permanent and should not have required hospitalization. Counsel for plaintiffs was permitted to show on cross-examination that his examination of the plaintiff was at the request of an insurance company. We have said the evidence was proper for the purpose of impeachment or contradicting the witness, as the jury might have found the employment made the physician biased in favor of the defendant. In *Industrial Farm Home Gas Co.* v. *McDonald*, 234 Ark. 744, 355 S.W.2d 174 (1962), we held that where a witness to an automobile accident is interrogated by the defendant about a written statement given to an insurance adjustor, the defendant must be prepared for the jury to know insurance is involved. But in those cases, the trial court had held the evidence was admissible, whereas here the trial court held it inadmissible,

and our review is confined to determining whether reversible error occurred.

Appellants assert that the bias and pecuniary interest of a witness are not collateral matters and may always be shown to discredit him, citing *Wright* v. *State*, 133 Ark. 16, 201 S.W. 1107 (1918). They point to several factors they say could have affected Dr. Dickson's bias: whether he was paid by St. Paul for his report and testimony; whether he was St. Paul's insured and was being defended by St. Paul in other litigation; whether he had testified for St. Paul in other cases. But the bias in *Wright* v. *State* was of a different sort and has little relevance to this case. There, a witness for the prosecution had on numerous occasions expressed ill will toward the defendant and on appeal it was held that the evidence should have been received. The other arguments of bias come closer to the mark, but the answer is that the trial court permitted Dr. Dickson to be asked if he was paid for his report and for his testimony. He answered that he could not recall whether he was paid for the report, and assumed he was not; he said he was not being paid to testify, though if any payment was offered he would accept it. The other questions concerning St. Paul were not raised before the trial court, at least we find nothing in the record (the hearing in chambers was not transcribed) and whether these factors would have produced a different evidentiary ruling by the trial court would be speculation. Based on what was presented to him, we cannot say the trial judge abused his discretion by refusing to hold that the evidence of insurance was so probative of biased testimony as to outweigh the prejudice inherent in such evidence.

Appellants ask us to hold that the trial court abused its discretion in sustaining objections to questions asked of Dr. Edwards on cross-examination. On direct, Dr. Edwards was able to recall a number of details which were not on the hospital records. To test his memory of distant events, counsel asked him on cross-examination to describe how he had treated the patient he had seen just prior to Richard, and how many patients he had seen that day. Counsel asked what he would charge per hour for giving a medical deposition in Jonesboro, which the court also rejected. Appellants cite

cases pointing out the duty of the trial court to permit a full, fair and reasonable cross-examination of a witness. *Huffman* v. *City of Hot Springs,* 237 Ark. 756, 375 S.W.2d 795 (1964), *Trammel* v. *State,* 193 Ark. 21, 97 S.W.2d 902 (1936), *Arkansas State Highway Commission* v. *Dean,* 247 Ark. 717, 447 S.W.2d 334 (1969). But we cannot say the trial court abused its discretion by these rulings. There are outer limits to cross-examination, which the trial court must fix, subject to limited review, and it isn't shown appellants were unduly restricted.

Appellants complain that counsel for appellee was permitted to bolster the reputation of Dr. Edwards and of the Campbell Clinic in Memphis, where Richard was treated, without plaintiff's having first attacked those reputations. Dr. Austin Grimes, called by the defense, was asked if he knew Dr. Edwards' qualifications to practice orthopedics, answering that he was a qualified orthopedic surgeon. But the objection was not made until well after the answer was given and the issue does not rise to the level of reversible error. We think the same may be said of another witness's laudatory reference to Dr. Willis Campbell, founder of Campbell's Clinic, who had died some forty years earlier, of which appellants complain. Perhaps neither question was entirely proper, but some irrelevant comments intrude inevitably into almost every trial. The human impulse to lend credibility to one's sources was not confined to the defense. Appellants' medical witness, Dr. Shutkin, citing an article from a medical journal he was relying on, described the author as a "very famous orthopedic surgeon of international renown."

Two arguments remain. First, appellants urge that a resume of Dr. Shutkin's education, training and experience should have been admitted as an exhibit. But the trial court refused it because it was covered by the witness on direct examination and we cannot say this ruling was error. Second, appellants allege error in the trial court's refusal to admit a copy of "Rules and Regulations For Hospitals and Related Institutions in Arkansas" compiled by the Division of Hospitals and Nursing Homes of the Arkansas State Department of Health. Regulation C, 4, (a) requires a

complete history and physical work-up in every patient's chart prior to surgery. Appellants contend that since Dr. Edwards did not complete the hospital records in this case until several days after the surgery, the regulations constitute some evidence that he was negligent. We disagree with the argument. Nowhere in the record is it suggested that there was a causal connection between Richard's disability and the failure to complete the history and physical work-up prior to surgery. And the essential element of proximate cause is not met simply by this proffered exhibit. See Prosser on Torts, 4th Ed., § 41. On their face the regulations apply to hospitals and nursing homes and, obviously, the cited regulation cannot be taken categorically, because frequently circumstances are such that to delay surgery for paper work would endanger the patient. Without some explanation to the jury as to how the result in this case was affected by the failure to comply with the regulations, assuming they applied, we think the trial court properly refused them. Certainly, we cannot say appellants' rights were substantially denied by the rejection of this evidence. See Rule 103, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979).

The judgment is affirmed.

The Chief Justice and Justice PURTLE dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. Error was committed during cross-examination when the trial court refused to allow appellants to show that appellee's witness, Dr. Dickson, was biased. Appellants attempted to elicit from the doctor that he had been employed by appellee's insurance company to furnish a report on the case. It was not until the doctor was actually shown the report that he admitted writing it, and then appellee's objection prevented further questioning. In chambers, the trial court ruled that "insurance" was not to be mentioned, thereby preventing appellants from showing that Dr. Dickson was biased by the fact that he had been paid by appellee's insurance company to furnish them a report on the case.

The majority acknowledges that "the trial judge held the evidence of insurance had some relevance as showing a possible bias by the witness, but that the prejudice which would result from the jury knowing insurance was involved outweighed any probative value." In *Murray* v. *Jackson*, 180 Ark. 1144, 24 S.W.2d 960 (1930), we allowed cross-examination on this very point, stating that a jury could find bias from the fact that a defense witness was employed to make a report to the defendant's insurance company. Although we have stated that insurance should not *unnecessarily* be injected into a case, we have consistently allowed references to insurance whenever it is relevant, as here, to an issue in the case. *York* v. *Young*, 271 Ark. 266, 608 S.W.2d 20 (1980); *Industrial Farm Home Cas. Co.* v. *McDonald*, 234 Ark. 744, 355 S.W.2d 174 (1962). The bias or interest of a witness is always a relevant issue. We have specifically and consistently held that it is not within the trial court's discretion to deny a party the privilege of showing that a witness is biased and that it is reversible error to exclude testimony which shows bias. *Wright* v. *State*, 133 Ark. 16, 201 S.W. 1107 (1918); *Bethel* v. *State*, 162 Ark. 76, 257 S.W. 740 (1924). The reason for the rule is that the jury is entitled to know of any possible bias since it affects the weight to be accorded to the witness's testimony. Here, the fact that appellee's witness was employed to furnish a report on the case to appellee's insurance company was clearly admissible for the purpose of showing bias in favor of appellee.

The majority attempts to evade the import of their decision in this case and our case of *Murray* v. *Jackson, supra,* by stating that "the trial court permitted Dr. Dickson to be asked if he was paid for his report and for his testimony." Dr. Dickson's response was that he could not recall whether he was paid for the report and coyly avoided whether he was being paid to testify by saying that he was not being paid to testify but if any payment was offered he would accept it.

Dr. Dickson's response points up the impact of the trial court's ruling that "insurance" was not to be mentioned. But for this ruling appellant would have been able to jog his memory by expressly asking him if he was paid by the

insurance company for which he made the report. At this time it is very significant to note that Dr. Dickson did not remember making the report at all until appellant jogged his memory by showing him the report. With a little help Dr. Dickson could probably have remembered that he did not write a comprehensive report for this insurance company without compensation.

I would adhere to our prior holdings that the right to show a witness is biased is not a discretionary matter, *Wright v. State, supra;* that if evidence is relevant and probative on the issue of bias, such evidence will not be excluded because its admission would disclose that an insurance company was in some way involved in the case. *York v. Young, supra.* When an insurance company employs and pays a witness to testify, then its insured should be prepared for the jury to know that insurance is involved. See *Industrial Farm Home Cas. Co. v. McDonald, supra.*

Although the trial court erroneously prohibited appellants from showing that appellee's witness was biased, it then properly, but inconsistently, allowed appellee to show that one of appellant's witnesses was biased. The trial court then erroneously refused to allow appellants to rebut evidence tending to show bias on the part of appellant's witness. This situation occurred when appellee asked on cross-examination how much appellant's witness, Dr. Shutkin, was being paid to testify; to which Dr. Shutkin responded $1,500 per day. Appellants later attempted to show that the fee was reasonable by asking appellee, Dr. Edwards, on cross-examination how much he charged for giving a medical deposition. However, the trial court refused to allow Dr. Edwards to answer the question. This ruling was in error. Just as a party should always be allowed to show bias, a party should also always be allowed to rebut the showing of bias.

I would reverse and remand for a new trial.

JOHN I. PURTLE, Justice, dissenting. I agree in full with the Chief Justice's dissent in this case but feel a need to write on an issue I feel is quite important in this case.

Our past cases have held that a practitioner must adhere to local standards and practices: this has been codified through Act 709 of 1979 (§§ 34-2601 et seq. [Supp. 1981]). Ark. Stat. Ann. § 34-2614 addresses this point:

(A) In any action for medical injury, the plaintiff shall have the burden of proving:

(1) That the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality; and

(2) That the medical care provider failed to act in accordance with such standard; and . . .

In the present case the appellants were prevented from introducing into evidence the Arkansas Department of Health's "Rules and Regulations for Hospitals and Related Institutions in Arkansas," which specifically require that a complete history and physical work-up by a physician be in the chart of every patient prior to surgery. These standards are applicable state-wide and would, therefore, be applicable as to the community in which appellee practiced at the time of the occurrence. The appellants at the lower court level had established a basis for proving that the regulation was not complied with when they introduced a preoperative check list which listed 18 items to be performed and initialed before surgery. One of these items was that the history and physical be on the patient's chart. Beside this numbered requirement was a box to be checked if this information had been dictated only. The appellee testified that he had this information available to him but did not get it into the boy's chart until almost two weeks after the operation. On the postoperative check list it was noted that the history and physical were not on the chart and the square was not checked that this material had been dictated. The appellants' contention at trial was that a complete history and work-up would have indicated elapsed time from the initial injury as well as how and where the injury occurred. They felt this information would be important in diagnosing,

consulting and treating the boy for his injuries. Whether this would have proven negligence to the satisfaction of the jury is unknown for the jury was not allowed to consider the rules and their alleged violation.

Counsel for the plaintiff had a right to develop his theory of the case the way he saw fit, within our rules of procedure and evidence. Uniform Rules of Evidence, Rule 401, defines relevant evidence by stating:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

I believe the rules and regulations in question clearly are within our guidelines as to evidence relevant in meeting the plaintiff's burden of proof and would have been a proper method of proving negligence. The appellee's actions or inactions in regard to these rules and regulations may not have been the sole proximate cause of the boy's disability, but may have been one link in a chain of events which taken together would allow a jury the opportunity to find a party negligent. The "causal connection" referred to in the majority opinion becomes perfectly clear through the use of this approach.

In any event, the Arkansas Department of Health's rules and regulations should have been allowed into evidence and if the judge felt an explanation to the jury was necessary, he could have made such explanation, limitation or admonishment to them upon the introduction of the material into evidence or through the jury instructions.

Counsel has the right to follow a set of trial tactics in attempting to prove the negligence of a defendant. In this case appellants were thwarted in these efforts after having laid the foundation for them. The question then becomes whether this material was relevant. I believe that it was error not to allow the rules and regulations into evidence. I would reverse and remand.