Cite as 2025 Ark. App. 414

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-24-130

| | | |
|---|---|---|
| ELIZABETH GOODE | APPELLANT | Opinion Delivered September 10, 2025 |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CV-17-608] |
| V. | | |
| JAYA NAIR | APPELLEE | HONORABLE HERBERT WRIGHT, JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Elizabeth Goode appeals from the September 19, 2023 final amended judgment entered by the Pulaski County Circuit Court following a jury trial of a motor-vehicle-collision claim involving injuries sustained by Goode. Goode argues that the circuit court committed prejudicial abuses of discretion by excluding relevant evidence tending to discredit appellee Jaya Nair's medical expert and by imposing a twenty-minute time limit per juror panel during voir dire. We affirm.

I. *Facts and Procedural History*

The case was tried to a Pulaski County jury on August 1–3, 2023. During the pretrial conference immediately before voir dire, the circuit court informed the parties that each side would have twenty minutes for voir dire for each of the two eighteen-member jury panels. The circuit court allowed each side five peremptory strikes to be used between the two

eighteen-member jury panels. Through a hand-delivered motion to the circuit court, Goode requested more time to conduct voir dire and identified the following five areas of inquiry as the basis for why more time was needed to conduct meaningful voir dire for this motor-vehicle-collision case:

> 1. The individual beliefs of all venire people on the applicable burden of proof in civil cases (preponderance versus reasonable doubt);
>
> 2. The individual beliefs of all venire people on whether compensation should be allowed for the aggravation of a preexisting condition (some believe any pre-existing condition is disqualifying and admit they would follow their personal belief and not the jury instruction requiring otherwise);
>
> 3. The individual beliefs of all venire people on the amount of compensation that should be allowed (some are against jury verdicts for large amounts regardless of the facts and admit they would follow their personal belief and not the jury instructions requiring otherwise);
>
> 4. The individual beliefs of all venire people on the amount of compensation that should be allowed for the pain and suffering element of damage (some are against giving any money for pain and suffering because it is too speculative and admit they would follow their personal belief and not the jury instruction requiring otherwise); and
>
> 5. The individual beliefs of all venire people on the type of treatment Goode received (chiropractic physician versus medical doctor).

The circuit court considered the motion and stated it would follow the twenty-minute time limit, but the court agreed to give counsel leeway if more time for important issues was needed and requested.

After Goode's counsel worked through several of these questions with the first panel, Nair's counsel made a twenty-minute time-limit objection. The circuit court imposed the twenty-minute time limit for the first eighteen-member panel despite Goode's request for

more time as per the circuit court's previous order. As a result, Goode's counsel was unable to elicit any information from the first panel on the prospective jurors' beliefs regarding the type of treatment Goode received; specifically, whether the prospective jurors leaned one way or the other regarding the weight they would give a chiropractic physician versus a medical doctor. The second panel was questioned without incident related to the time limit, and two individuals were struck for cause due to bias against chiropractic physicians.

Before trial, Nair conducted a video deposition of Dr. Wayne Bruffett, M.D., for use at trial. Nair had retained Dr. Bruffett as a defense expert. During the deposition, Dr. Bruffett testified that his medical-legal case documents were kept under the control of Zorian Pride, his department manager. Dr. Bruffett agreed that after the deposition concluded, he would have Ms. Pride provide certain requested documents that would be given to the court reporter to attach as exhibits to his deposition. Specifically, Dr. Bruffett agreed to have Ms. Pride produce his engagement letter with Nair's defense law firm that hired him to be attached as exhibit 5 to his deposition, which was completed as shown by the deposition exhibit list.

Dr. Bruffett agreed that the financial information, including his payment under the defense-law firm engagement letter (exhibit 5), would be provided by Ms. Pride and attached as exhibit 6 to the deposition, showing how much the defense paid him in the case for his medical-legal examination and report as well as how much he was paid to testify at the deposition. A record showing payment of $6,000 to Dr. Bruffett's clinic was provided and

attached as exhibit 6 to the deposition; however, Dr. Bruffett did not attach documents showing how much he was paid for his deposition testimony.

Dr. Bruffett was also asked to provide—and attach as exhibit 8 to his deposition—the billing and revenue generation from providing medical-legal defense examinations of injury patients for the previous four-year period. Dr. Bruffett failed to provide these documents to attach as exhibit 8 as shown by the deposition exhibit list.

After Nair played the video deposition of Dr. Bruffett for the jury during her case-in-chief, Goode sought to introduce the deposition exhibits 1 through 8 that were authenticated and discussed by Dr. Bruffett during his deposition, with the expectation that the exhibits would be published to the jury. The circuit court denied the introduction of the set of exhibits, which prevented the jury from seeing exhibit 6 and learning that the defense had paid Dr. Bruffett $6,000 for a ten-minute medical exam, records review, and report writing. The circuit court's denial occurred after a series of proffers was made related to issues involving the subpoenaed office manager rebuttal witness, Ms. Pride, being excluded by the circuit court during a hearing held while the jury was taking a break. These proffered exhibits, shown on the exhibit list attached to Dr. Bruffett's deposition, included the following:

Exhibit 1: Subpoena served on Dr. Bruffett July 20, 2021, a year before his deposition.

Exhibit 2: Affidavit by Dr. Bruffett in response to the served subpoena stating he had no documents responsive to the request for copies of records related to his medical-legal case work for the previous four years, including list of cases referred to him and by whom, 1099 forms showing payments received, and referrals received from the defense law firm in this case. Dr. Bruffett's affidavit was contradicted by his deposition testimony that his department manager, Zorian Pride, had possession of these business records involving his past medical-legal case work.

4

Exhibit 3: Clinic forms completed and submitted by Goode before being examined by Dr. Bruffett.

Exhibit 4: Lists provided by Goode to Dr. Bruffett during her ten-minute defense medical exam, describing how her life changed after the collision to include things that she can still do but which cause pain and problems later, things she rarely does, and things she can still do but with difficulty or pain.

Exhibit 5: Engagement letter from Laser Law Firm to Dr. Bruffett dated January 3, 2019.

Exhibit 6: Partial payment ledger of payment made to Dr. Bruffett in the amount of $6,000 on May 8, 2019. However, the remaining evidence promised by Dr. Bruffett during his deposition to provide the documentation showing how much he was paid for his trial testimony was never produced, and the jury was not allowed to know about this fact.

Exhibit 7: Letter from Laser Law Firm dated January 15, 2020, to Dr. Bruffett's clinic with a $260 check issued by Farmers Insurance Company to reimburse for an erroneous improper double billing of Goode's health insurance company and co-pay billing by Dr. Bruffett, in addition to the $6,000 charged for his ten-minute defense medical exam, records review and report writing.

Exhibit 8: Listed on the exhibit list by the court reporter as: "Financial info and revenue generated from Dr. Bruffett's med-legal work from previous four years." With a note underneath: "(Reporter's Note: Plaintiff's Exhibit 8 was tendered but not received.)" This evidence promised by Dr. Bruffett during his deposition was never produced, and the jury was not allowed to know about this fact.

After Nair rested her case-in-chief and after Goode's proffer to admit the above exhibits was denied, Goode sought to call Ms. Pride, who was present in the courtroom as a rebuttal witness pursuant to a served subpoena. Ms. Pride was asked to explain why she had not provided the court reporter with the documents Dr. Bruffett agreed to provide and to be attached as exhibits 6 and 8 to his deposition. This occurred after Dr. Bruffett testified before the jury that Ms. Pride was the custodian of his records and would be the person to

5

provide his records. However, the circuit court refused to allow Ms. Pride to testify on rebuttal for the reason that impeachment is appropriate for cross-examination but not rebuttal.

The jury found in favor of Goode, and an initial judgment awarding a total of $15,240 to Goode was entered on September 12, 2023. Following the entry of an amended judgment on September 19, Goode timely filed a motion for new trial on September 26. The circuit court denied Goode's motion on October 26, and Goode timely filed a notice of appeal on November 27. This appeal followed.

II. *Discussion*

A. Exclusion of Evidence to Discredit Nair's Medical Expert

We review evidentiary errors under an abuse-of-discretion standard, and the circuit court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Riley v. First State Bank*, 2024 Ark. App. 142, at 7, 686 S.W.3d 44, 48–49. Moreover, we will not find an abuse of discretion unless a circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*

Goode initially argues that the circuit court's refusal to admit relevant deposition exhibits violated her right to cross-examination, which is fundamental to due process, citing *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970), and which is one of the safeguards to accuracy and truthfulness, citing *Davis v. Arkansas Best Freight System*, 239 Ark. 632, 634, 393 S.W.2d 237, 238 (1965). She notes that our supreme court in *Arkansas State Highway Commission v. Dean*, 247 Ark. 717, 722–23, 447 S.W.2d 334, 337 (1969), has held that proper cross-

6

examination ensures the jury has an opportunity to give proper weight to the testimony of a witness and that courts should be especially liberal and allow wide latitude for cross-examination, and the failure to do has been held to be prejudicial and to constitute reversible error.

Goode maintains that the circuit court abused its discretion by refusing to admit the impeachment exhibits to Dr. Bruffett's testimony into evidence after he finished testifying before the jury, including evidence of a $6,000 payment to him for his ten-minute medical examination, records review, and report writing. Goode submits that this exclusionary ruling also rewarded Dr. Bruffett's misconduct in refusing to produce his records showing how much he was paid in total by the defense for his trial testimony as well as records showing his case list for his medical-legal expert-witness work as a defense-hired doctor for the previous four years.

Pursuant to the previously described agreement, Ms. Pride provided the court reporter with a record that was attached to the deposition transcript as exhibit 6 showing a payment of $6,000 to Dr. Bruffett for his examination of Goode, his records review, and his writing a medical report to be used by the defense. However, contrary to Dr. Bruffett's agreement, no billing or payment records were provided for Dr. Bruffett's deposition preparation time or the time spent giving his deposition, which Goode claims amounted to thousands of dollars that was not disclosed to the jury. Goode maintains that the circuit court's ruling prevented the jury from considering and weighing this evidence showing Dr. Bruffett's defense bias and prevented the jury from seeing that Dr. Bruffett was untruthful

when he broke his promise to provide records showing the amount of his payment for giving his courtroom testimony in this case and his revenue for the past four years for his defense medical-legal case work. Goode argues that excluding the exhibits constitutes reversible error.

We disagree. Goode's counsel argued that the deposition exhibits were relevant because they showed that Nair's insurance company paid for Dr. Bruffett's independent medical examination, i.e., that because Nair's insurance carrier paid for the independent medical examination, such payment allowed him to explore the involvement of the insurance company in the litigation. Goode's counsel noted that "what we have here is not a situation where we just want to talk about insurance in general." The circuit court rejected this argument, ruling, "We're not going to talk about who's paying for the exhibit, other than the defense."

In *Hively v. Edwards*, 278 Ark. 435, 438, 646 S.W.2d 688, 689 (1983), our supreme court analyzed the cases that have held that it is inherently prejudicial to inform a jury that insurance coverage exists as well as exceptions to that theory. Those exceptions generally revolve around attempts by a party to mislead the jury, and in *Hively*, the supreme court upheld the circuit court's refusal to allow counsel to ask a physician/witness what he would charge per hour for giving a medical deposition, holding that the appellants had not shown they were unduly restricted. *Id.*

Likewise, here, there is no assertion that anything Nair or her counsel did and nothing that Dr. Bruffett testified to misled the jury. The sole assertion is that the fact that an insurance company paid for an independent medical examination should have been

8

revealed to the jury. Because there is no contention that Nair or Dr. Bruffett misled the jury or otherwise acted improperly and Dr. Bruffett was cross-examined in-depth on the stand, there is no basis for revealing the involvement of the insurance company.

Moreover, we hold that the insurance company's payment for the independent medical examination has little to no probative value in this case. Admissible evidence is that which has probative value, i.e., evidence that has some relevance to the issues to be determined at trial. *See* Ark. R. Evid. 401 and 402 (2024). Evidence that has no probative value should be excluded. *See id.* Evidence is relevant if the item of evidence reasonably shows that a fact is slightly more probable than it would appear without the evidence. *Wheatley v. Dixie Mall 2003, LLC*, 2016 Ark. App. 94, at 10, 482 S.W.3d 760, 766. Here, the fact that an insurance company had paid certain expenses incurred in relation to Nair's defense had no relevance to the issues being tried to the jury, but revealing the involvement of an insurance company had a high probability of causing prejudice to Nair. Arkansas Rule of Evidence 403 (2024) precludes the admission of even relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *Baker v. Trevathan*, 2018 Ark. App. 135, at 6, 542 S.W.3d 231, 235. Therefore, the circuit court properly excluded the documents in question.

Goode's counsel was able to broadly cross-examine Dr. Bruffett about the key topics that allegedly would have been revealed by admission of these exhibits. Dr. Bruffett testified that the Laser Law Firm asked him to perform Goode's medical examination. Dr. Bruffett testified that he had performed other "defense medical examinations" for the Laser Law

Firm. Dr. Bruffett confirmed that he has been doing legal-medical examinations for about twenty years. He testified that he has a fee schedule and that fees paid for medical-legal work go through the clinic. He acknowledged that if more money is received from his legal-medical consultations, he would expect to draw more money out of the clinic. Dr. Bruffett even acknowledged that he was paid by the Laser Law Firm but did not remember who wrote the check. While Goode's counsel did not elicit the exact amount of money Dr. Bruffett was paid for his testimony—because Dr. Bruffett could not remember the amount—counsel did fully explore Dr. Bruffett's financial interests, and the jury was well aware that Dr. Bruffett was compensated for his work and that he periodically participated in other independent medical examinations, i.e., legal-medical work formed a reasonable share of his practice. Goode's cross-examination covered the topics requested. The circuit court prohibited inquiry only into areas that would have been, at most, marginally relevant but that would have been clearly prejudicial to Nair. Accordingly, no basis is shown for holding that the circuit court abused its discretion by denying Goode's request to admit the documents.

Goode also argues that the circuit court's refusal to allow Ms. Pride to testify as a rebuttal witness constitutes a prejudicial abuse of discretion. During a bench conference, Goode's counsel stated that the purpose of calling Ms. Pride to testify in rebuttal to Dr. Bruffett's testimony was to elicit information about the same exhibits that previously had been held to be inadmissible. The reason for calling Ms. Pride was to find out why certain records requested at Dr. Bruffett's video deposition had not been produced.

The circuit court noted that no motion to compel had been filed and that while the material sought might have been appropriate for impeachment, it was not appropriate for rebuttal. The circuit court announced that had Goode's counsel filed a timely motion to compel, it would have granted it, and Goode's counsel could have re-deposed Dr. Bruffett, then used the material for impeachment.

Arkansas appellate courts have held that "[g]enuine rebuttal evidence consists of evidence that is offered in reply to new matters." *Mack-Reynolds Appraisal Co. v. Morton*, 2010 Ark. App. 142, at 8, 375 S.W.3d 6, 11. Here, there were no new matters at issue. Goode had been aware of the missing records for months, had failed to file a motion to compel, and attempted at trial to call a witness for rebuttal as a means of discovering facts that could and should have been determined by means of a motion to compel. Goode's counsel all but acknowledged that the facts that were being sought through the rebuttal witness—the amount that Dr. Bruffett had been paid and information about the various exhibits to Dr. Bruffett's deposition—were the same facts that the circuit court had previously held were not admissible through the exhibits. We hold that no basis has been shown that the circuit court's decision to refuse to allow Ms. Pride to testify was an abuse of discretion.

B. Imposition of a Twenty-Minute Time Limit Per Panel in Voir Dire

Goode next argues that the circuit court's imposition of a twenty-minute time limit per panel in voir dire prevented her from being able to intelligently exercise her peremptory strikes, thus resulting in prejudice. And, as importantly, she cites *Rosales-Lopez v. U.S.*, 451 U.S. 182, 188 (1981), in support of her argument that without an adequate voir dire, a circuit

11

court cannot fulfill its responsibility to remove prospective jurors who are unable to impartially follow the law and evaluate the evidence.

The circuit court implemented twenty-minutes per party for two eighteen-member jury panels for voir dire, following a system developed to move criminal cases through the court's busy criminal docket. Goode submits that this criminal-case method is ill-suited for civil case trials by forcing counsel to ask the same questions multiple times with each of the two panels, wasting much of the twenty minutes arbitrarily allowed for each panel. Goode urges that in this case, it resulted in her having insufficient time to explore all five critical issues pertinent to this case. She argues that justice could have been better served by asking the pertinent questions to all the assembled venire people over a forty-minute time period instead of following the two-panel criminal-trial method of jury selection requiring redundant questions.

During the questioning of the first jury panel, several potential jurors asked questions. The circuit court ruled that jurors asking questions was improper and held this against Goode's counsel's twenty-minute limitation, asserting without supporting citation that the Arkansas Supreme Court has held it impermissible for potential jurors to ask questions. Nair's counsel subsequently objected to Goode's counsel exceeding the imposed time limit, and the circuit court denied Goode's request for more time. Goode submits that as a result, the circuit court prejudicially hampered her voir dire examination on critical issues in the case that were identified, including not being able to inquire of the first panel whether the venire people could give equal weight to the testimony of treating chiropractic physicians

12

versus a defense medical doctor. Tellingly, the circuit court later dismissed two prospective jurors for cause during questioning of the second eighteen-member panel because of their bias against chiropractic physicians.

Goode acknowledges that the imposition of a thirty-minute time limit for voir dire has been upheld by our supreme court, but she notes significantly that the time limit was not mechanically imposed. *See generally Britt v. State*, 334 Ark. 142, 165, 974 S.W.2d 436, 447 (1998). Such is not the case here. The circuit court held it against Goode when the venire people did their job in communicating information about their personal beliefs and biases affecting their partiality involving key issues presented in this civil trial, which is essential for a party to make preemptory challenges. Goode contends that in doing so, the circuit court did not allow recognized wide latitude to test the legal qualifications and competency of the jurors as required by *Baldwin v. Hunnicut*, 192 Ark. 441, 93 S.W.2d 131 (1936). Instead, she urges it did the opposite by strictly imposing an arbitrary twenty-minute time limitation, which unfairly limited Goode's right to seek twelve people who could render an impartial verdict.

Goode submits that the circuit court failed to consider the issues she raised that needed additional time for voir dire, which she claims should have been given significant weight because of their particular relevance to this case. Alternatively, Goode argues that if the circuit court did consider all the appropriate factors, it nonetheless committed a clear error of judgment in weighing those factors. *See Throneberry v. State*, 102 Ark. App. 17, 18, 279 S.W.3d 489, 490 (2008). She claims the circuit court's refusal to allow more time for

voir dire examination during the first eighteen-member panel constitutes a prejudicial abuse of discretion requiring reversal.

We disagree. Albeit in a criminal case, the Arkansas Supreme Court recently provided instructive language regarding the standard of review in cases involving voir dire:

> The extent and scope of voir dire examination of prospective jurors falls within the circuit court's sound discretion, and the latitude of that discretion is wide. Accordingly, we will not reverse voir dire restrictions unless that discretion is clearly abused. An abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. The judge shall initiate voir dire by identifying the parties and their respective counsel, revealing any names of prospective witnesses, and briefly outlining the nature of the case. But beyond these four requirements, counsel may ask additional questions only as the judge deems reasonable and proper. We will not reverse for nonprejudicial errors in jury selection.

*Nelson v. State*, 2024 Ark. 24, at 11–12, 683 S.W.3d 177, 188–89 (internal citations omitted).

*Nelson* is the latest in a long line of decisions recognizing that the standard of review is one of abuse of discretion. As a general rule, any appellant seeking to reverse a discretionary decision of a circuit court must show prejudice. *See, e.g., Barnes v. Everett*, 351 Ark. 479, 486, 95 S.W.3d 740, 744–45 (2003). And our supreme court has indicated that the requirement that an appellant demonstrate prejudice as a prerequisite to prevailing on appeal applies to appeals involving voir dire. *See Ark. State Hwy. Comm'n v. Dalrymple*, 252 Ark. 771, 772, 480 S.W.2d 955, 956 (1972).

The process began with the circuit court stating that each party would have twenty minutes to conduct voir dire for each of the two panels. It reviewed a written motion, filed by Goode's counsel, which asked for additional time to conduct voir dire. After reviewing the motion, the circuit court found that there was nothing "in here that changes my mind"

14

concerning the length of voir dire. Counsel argued that the time limit was "mechanical," to which the circuit court responded, "Is there another time limit from mechanical, if I'm setting a time?" After hearing additional argument from Goode's counsel that he should have additional time for voir dire, the circuit court agreed that if something came up that is "a significant issue" or "outside the norm," counsel could approach and ask for additional time.

During voir dire of the first panel, Goode's counsel explored that there had been a significant delay between the date the accident occurred in 2014 and the date of the trial in 2023. Several jurors were troubled by this fact. The circuit court interceded and threw "a little lifeline" to counsel, explaining the delay to the jurors and emphasizing that neither party was at fault for the delay. Counsel also allowed potential jurors to ask questions during voir dire, which led the circuit court to remark, "Mr. Chaney walked into this buzz saw, and I'm going to have remove him [from the buzzsaw]." The circuit court stated that prospective jurors could not question the attorney during voir dire and further noted, "I have tried to give Mr. Chaney some leeway in his voir dire." Later, Goode's counsel was reminded by the circuit court yet again that he could not answer questions from the potential jurors.

A review of the record indicates that Goode's counsel asked approximately forty questions during his voir dire of the first panel. During the twenty minutes allowed, counsel addressed multiple issues enumerated among the five points included in his motion. After Goode's counsel's twenty-minute time limit for voir dire had expired, a bench conference was held in which Goode's counsel again argued that the circuit court was imposing a

"mechanical time limit" and asked for additional time for voir dire. The circuit court denied his request, noting that Goode's counsel's voir dire was "all over the place" and that he "violated three or four rules that have been objected to, so I haven't called him down for that." The circuit court concluded that Goode's counsel had "wasted his time" and refused to grant additional time. Additionally, when the court asked each party whether the jury was "good" for them, Goode's counsel agreed that he was good with the jury.

We hold that Goode has failed to show sufficient evidence of a reversible prejudicial abuse of discretion. To the extent Goode's counsel failed to fully explore the enumerated issues, it appears to have been an issue of poor time management of the twenty minutes that he was allotted. Goode's attorney knew the limitation in advance and failed to exercise reasonable care to fully utilize the time allotted. Under these specific circumstances, we fail to see how the limitation was so unreasonable as to constitute an abuse of discretion, nor is there any showing that Goode did not receive a fair trial before an impartial jury because of this time limit. Accordingly, we affirm.[1]

---

[1]On August 29, 2025, Goode's counsel filed a motion for oral argument, asserting that oral argument in her case is authorized by Rule 5 of the Rules of the Arkansas Supreme Court and Court of Appeals (2025). Yet, despite referencing Rule 5, counsel failed to comply with the requirement that a request for oral argument must be made "contemporaneously with" either Goode's brief-in-chief or her reply brief. *See Ferguson v. State*, 342 Ark. 273, 26 S.W.3d 787 (2000) (per curiam). Here, Goode's brief-in-chief was filed on August 28, 2024, her reply brief was filed on October 31, 2024, and her August 29, 2025 motion was not filed contemporaneously with either brief. The exhibit attached to that motion, which indicated that an email requesting oral argument was sent to the clerk of this court on August 24, 2024, does not meet the contemporaneous-filing requirement of the request. Moreover, it is clear that the briefs and record adequately submit the facts and legal arguments presented,

16

Affirmed.

THYER and MURPHY, JJ., agree.

*Chaney Law Firm, P.A.*, by: *Don P. Chaney* and *S. Taylor Chaney*, for appellant.

*Laser Law Firm*, by: *Kevin Staten* and *Brian A. Brown*, for appellee.

---

and granting an oral argument would not significantly aid the decision-making process. Ark. Sup.Ct. R. 5-1(a)(3). The motion is therefore denied.